Back v Facey
2026 NY Slip Op 03858
June 18, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Abraham Back et al., Respondents,
v
Dalkeith G. Facey et al., Appellants.

Decided and Entered:June 18, 2026
CV-25-0246
Calendar Date: April 28, 2026
Before: Garry, P.J., Clark, Fisher, Mackey And Ryba, JJ.

Martin, Ganotis, Brown, Mould and Currie, PC, Dewitt (Megan A. Lawless of Barker Patterson Nichols, LLP, Garden City, of counsel), for appellants.
Harding Mazzotti, LLP, Albany (Peter P. Balouskas of counsel), for respondents.

[*1]
Fisher, J.
Appeal from an order of the Supreme Court (Mary Farley, J.), entered January 14, 2025 in St. Lawrence County, which denied defendants' motion for summary judgment dismissing the complaint.
On April 2, 2020, plaintiff Abraham Back presented to the emergency department of Massena Hospital with complaints suggestive of a gallbladder attack. An ultrasound examination revealed the presence of gallstones and mild dilation of the common bile duct. Defendant Dalkeith G. Facey, a general surgeon, was consulted and suspected acute cholecystitis (inflammation of the gallbladder), and scheduled Back for a laparoscopic cholecystectomy (removal of the gallbladder). Facey performed the procedure the next day, removing the gallbladder after placing surgical clips on the cystic artery, and recorded no complications in his operative report. Following the surgery, Back became jaundiced and was ultimately transferred to a different facility where additional imaging tests confirmed that the common bile duct was obstructed by surgical clips. As a result, Back was diagnosed with obstructive jaundice and underwent an open bile duct reconstruction surgery.
Back and his spouse, derivatively, commenced this medical malpractice action alleging, among other things, that defendants committed medical malpractice by negligently performing a laparoscopic cholecystectomy, failing to identify the proper bile duct and biliary anatomy before clipping, placing surgical clips that obstructed the common bile duct, and failing to properly diagnose Back's postoperative condition as a bile duct injury. After issue was joined and disclosure completed, defendants moved for summary judgment, contending that they were immune from liability for the care provided to Back pursuant to the Emergency or Disaster Treatment Protection Act (Public Health Law former §§ 3080-3082 [hereinafter EDTPA]). Specifically, defendants contended that Back's care was impacted by the COVID-19 outbreak as Facey could not perform robotic surgery and instead had to perform the gallbladder removal laparoscopically. Plaintiffs opposed, contending that an issue of fact exists as to whether the unavailability of the robotic surgery system had impacted Back's treatment and, alternatively, that an exception to EDTPA immunity exists. Supreme Court found that defendants failed to establish their moving burden as to whether the alleged deviations relating to the surgical procedure and subsequent failure to diagnose Back's surgical injuries had been impacted by defendants' response to COVID-19. Defendants appeal.
In March 2020, New York declared a disaster emergency in response to the COVID-19 pandemic (see 9 NYCRR 8.202). In recognizing the public health emergency caused by COVID-19, the Legislature enacted the EDTPA to provide any health care facility or health care professional with "immunity from any [civil] liability . . . for any harm or damages alleged to have been sustained as a result of an act or omission in the course [*2]of arranging for or providing health care services as long as three requirements were met: [1] the services were arranged for or provided pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law, [2] the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID-19 outbreak and in support of the State's directives, and [3] the services were arranged or provided in good faith" (Damon v Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 228 AD3d 618, 619 [2d Dept 2024] [internal quotation marks and citation omitted]). The immunity conferred by the EDTPA does not apply, however, for acts or omissions constituting gross negligence or reckless misconduct (see Public Health Law former § 3082 [2]).
"Public Health Law [former] § 3082 does not qualify how treatment must be affected — whether positively, negatively, or otherwise — it merely requires that treatment be impacted" (Holder v Jacob, 231 AD3d 78, 85 [1st Dept 2024] [internal quotation marks and citation omitted]). Nor does it "require that the plaintiff's treatment be uniquely impacted as compared to other patients, or identify any particular aspect of, or the materiality of any aspect of, the plaintiff's treatment that must be impacted to warrant a finding that the immunity statute is applicable" (Sapienza v Tromba, 241 AD3d 722, 723-724 [2d Dept 2025]). In reviewing such impact, since the statute confers "immunity from liability, [it] must be strictly construed and requires a fact-intensive inquiry" (Thomas v Concourse Rehabilitation & Nursing Ctr., Inc., 244 AD3d 552, 553 [1st Dept 2025] [internal quotation marks and citation omitted]).
"When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations, and such should only be granted when there is no doubt as to the absence of triable issues of fact" (Lubrano-Birken v Ellis Hosp., 229 AD3d 873, 875 [3d Dept 2024] [internal quotation marks and citations omitted]). Here, defendants supported their motion with, among other things, an affidavit from a registered nurse at the hospital, the deposition testimony of the parties and Back's medical records. In her affidavit, the registered nurse outlined extensive changes in hospital operation due to the pandemic and explained that Back's care during his admission had been impacted because, in order to comply with the New York State directives, the hospital converted all but one of its operating rooms into temporary units for inpatient surge beds. As a result of the hospital's surge plan, she further testified that Back's surgery had been delayed one day due to limitations associated with the availability of the operating room and anesthesia team, understaffing and because Back had to be additionally cleared for the procedure after [*3]developing symptoms suggestive of COVID-19. During his deposition, Facey testified that the robotic surgery system at the hospital was unavailable at the time of Back's surgery because it had been set up in one of the operating rooms that had been converted into additional beds, as well as the fact that there were fewer trained personnel available to participate in robotic surgeries. According to Facey, he preferred robotic surgery over laparoscopic surgery when performing a gallbladder removal because of "better instrumentation and better visualization" due to improved instruments and a better camera. However, Facey further testified that "either laparoscopic or robotic [surgery] would be fine because [he] was trained in residency doing laparoscopic," and that his method of performing Back's laparoscopic surgery did not change in any way as a result of COVID. As relating to Back's postoperative condition, Facey testified that he suspected a stone obstructing the common bile duct — although he confirmed that the prior imaging studies did not reveal the presence of any stones in that location. Back's medical records confirmed delays in imaging test results and that he had been placed into an isolated room until he tested negative for COVID-19, as well as that he did not suffer postoperatively from a ductal stone obstruction.FN1
Based on the foregoing, we agree with Supreme Court that defendants failed to establish, prima facie, that the care and treatment of Back had been "impacted by decisions or activities [that were] in response to or as a result of the COVID-19 outbreak" (Public Health Law former § 3082 [1] [b]; see Sapienza v Tromba, 241 AD3d at 724). The gravamen of plaintiffs' allegations against defendants relate to a surgical error and postoperative misdiagnosis, and not a delay in treatment. Thus, the proof submitted by defendants describing the numerous and pervasive changes to the hospital's operation and patient care during Back's admission — which undoubtedly contributed to delays in care due to understaffing and facility limitations — has no bearing on the treatment rendered to Back (see Holder v Jacob, 231 AD3d at 88). As to the treatment that was performed, even though it is true that Facey testified that the robotic surgery system was unavailable due to the pandemic and that he would have preferred to perform Back's procedure robotically because of its perceived advantages, defendants failed to demonstrate how this impacted Back's gallbladder removal. Indeed, at no point in the record does Facey indicate that a laparoscopic surgery was inappropriate under the circumstances for Back's gallbladder removal. Rather, Facey testified that he was trained — and had trained others — to perform gallbladder removals laparoscopically, and that he had no issue with performing Back's surgery in this manner because he had performed this procedure "quite a lot." Nor did Facey explain, other than stating that robotic surgery offers better instrumentation [*4]and visualization, how a gallbladder removal performed laparoscopically differed from a robotic approach. As it specifically related to performing Back's surgery, neither Facey's operative report nor his deposition testimony indicated any intraoperative complications relating to either instrumentality or visualization. To the contrary, Facey agreed that he could "clearly" see the cystic artery where he placed the surgical clips, that there was no need to perform intraoperative imaging tests because the anatomy was "clearly defined," that he did not need to convert to an open procedure to increase visibility, and that he took "all of the necessary steps" to establish the "critical view of safety." He further agreed that COVID-19 had not changed his method of performing Back's gallbladder removal laparoscopically.
We are mindful that nearly all other appellate-level decisions have examined this issue in the context of a motion to dismiss under CPLR 3211 (a) (7), and we are also aware that this case is governed by the initial and broader definition of "health care services" before the amendment that narrowed such definition took effect on August 3, 2020 (Public Health Law former § 3081 [5] [c] [eff Mar. 7, 2020 to Aug. 2, 2020]; see Damiani v WSNCH N., Inc., 244 AD3d 1059, 1061-1062 [2d Dept 2025]). But even under those circumstances, movants must establish a nexus between the alleged negligence and how it was impacted by their response to COVID-19 (see e.g. Holder v Jacob, 231 AD3d at 82-89 [determining that, although the facility experienced significant staffing shortages and was up to 97% bed capacity, the defendant's proof failed to demonstrate how the pandemic impacted its ability to prevent a fall and diagnose the plaintiff's post-fall injuries in the time period before the amendment]; see also Thomas v Concourse Rehabilitation & Nursing Ctr., Inc., 244 AD3d at 554 [determining that, although the plaintiff had been diagnosed with COVID-19, the defendant failed to demonstrate how the pandemic impacted its treatment of the plaintiff's other complex medical conditions in the time period before and after the amendment]; Jackson v BronxCare Health Sys., 236 AD3d 594, 595-596 [1st Dept 2025] [determining that, although the plaintiff had been diagnosed with COVID-19 and the facility experienced staffing shortages due to the pandemic, the defendant's proof failed to demonstrate how the pandemic impacted its ability to provide the plaintiff with a walking device to prevent her fall in the time period after the amendment]). Here, when viewed in the light most favorable to plaintiffs as the nonmoving parties, the record before us fails to demonstrate how the pandemic impacted defendants' ability to perform Back's gallbladder removal surgery or correctly diagnose his postoperative condition (see Sapienza v Tromba, 241 AD3d at 724; see also Damiani v WSNCH N., Inc., 244 AD3d at 1062-1063; Holder v Jacob, 231 AD3d at 88-89).Accordingly, defendants' motion [*5]for summary judgment was properly denied. Since defendants did not establish their moving burden, we do not consider plaintiffs' opposition papers and their contention that an exception to immunity applies. To the extent not already addressed, the parties' remaining contentions have been reviewed and found to be without merit or rendered academic.
Garry, P.J., Clark, Mackey and Ryba, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1
Back did not test positive for COVID-19, and it was ultimately determined that Back's respiratory symptoms were related to his underlying gallbladder inflammation.